IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HALIMA TARIFFA CULLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:19-cv-701-TFM-MU |
| | ) | |
| STEVE MARSHALL, in his official | ) | |
| capacity as Attorney General of the State | ) | |
| of Alabama, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are the *Motion for Judgment on the Pleadings of Attorney General Steve Marshall and District Attorney Ashley Rich* (Doc. 18, filed 1/3/20, as supplemented by Doc. 33, filed 11/23/20) and the *Motion to Dismiss* (Doc. 20, filed 1/6/20, as supplemented by Doc. 34, filed 11/23/20). Plaintiff timely filed its responses in opposition. *See* Docs. 25, filed 2/3/20; Doc. 38, filed 12/14/20. Defendants timely replied. *See* Docs. 26, 27, 39. The motions are fully submitted and ripe for review. After a careful review of the motions, responses, replies, the pleadings, and the relevant case law, the Court **GRANTS** the motions for the reasons articulated below.

### I. PARTIES, JURISDICTION, AND VENUE

Plaintiff Halima Tariffa Culley ("Plaintiff" or "Culley") filed a purported class action complaint against three defendants: (1) Steve Marshall, in his official capacity as the Attorney General of the State of Alabama ("AG Marshall") (2) Defendant Ashley Rich, in her official capacity as the District Attorney for the 13th Judicial Circuit of Alabama - Mobile County ("DA Rich"), and (3) and the City of Satsuma, Alabama ("the City"). The Court will collectively refer

to AG Marshall and DA Rich as ("the State") as utilized by the Plaintiff and reference all three collectively as "the Defendants."

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights jurisdiction) as Plaintiff brings claims under 42 U.S.C. § 1983. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   STANDARDS OF REVIEW

The City filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), while the State filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## A.   Motion To Dismiss – Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Little v. City of N. Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (per curiam) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

However, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed 868 (2009). The U.S. Supreme Court

has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682, 129 S. Ct. at 1951-52).

Rule 12(b)(6) is read in consideration of Federal Rule of Civil Procedure 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Although Rule 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. To survive a motion to dismiss, a complaint must state on its face a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Unless the plaintiffs have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S at 556, 127 S. Ct. at 1965).

**B.      Motion for Judgment on the Pleadings – Fed. R. Civ. P. 12(c)[1]**

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).   Judgment on the pleadings pursuant to Rule 12(c) is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law."   *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996).   When reviewing a judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party.   *Id*.   A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts."   *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998).   In other words, a Rule 12(c) motion "is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."   *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying 12(b)(6) standard of review to a 12(c) motion).

Eleventh Circuit precedent discussing the standard of review for a motion under Rule 12(c) indicates "[j]udgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").   *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)); *see also Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) ("If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint.").   These cases have not yet been explicitly overturned.   However, that same language

---

[1] A Rule 12(b)(6) motion and a Rule 12(c) motion functionally serve the same purpose. However, a Rule 12(b)(6) motion must be made before the responsive pleadings are filed, while Rule 12(c) motions may be made afterwards.

was previously utilized in the context of a Rule 12(b)(6) motion to dismiss prior to *Twombly*, 550 U.S. 544, 127 S. Ct. 1955.  In *Twombly*, the Supreme Court explained that this "no set of facts" language "earned its retirement" because it is simply "an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id*. at 563, 127 S. Ct. at 1969.  As caselaw is clear that the standards are functionally identical for a Rule 12(b)(6) and Rule 12(c) motion, the Court will apply the *Twombly* standard.  *See, e.g., Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (applying *Twombly* to a Rule 12(c) motion); *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549-50 (6th Cir. 2008) (same); *Doe v. MySpace Inc.*, 528 F.3d at 418 (same); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (same).

### III.   FACTUAL AND PROCEDURAL BACKGROUND

As noted above, the Court accepts Plaintiff's allegations as true for the purposes of this review.  Plaintiff resides in Rockdale County, Georgia.  In 2019, her son, Tayjon was a student at the University of South Alabama located in Mobile, Alabama.  When he went to college, Plaintiff purchased a 2015 Nissan Altima ("the Vehicle") for his use, though the vehicle is titled to Culley and registered in the state of Georgia.  Plaintiff also paid the registration and insurance on the vehicle.  *See* Doc. 1 at ¶¶ 22-26.

On or about February 17, 2019, Tayjon was arrested and charged with the possession of marijuana and drug paraphernalia.  Incident to that arrest, police officers with the City seized the Vehicle.  Plaintiff was not charged with a crime and had no knowledge that her son had marijuana and drug paraphernalia in the Vehicle.  Upon learning the Vehicle had been seized incident to arrest, Plaintiff contacted the City to retrieve the Vehicle.  The City then contacted

DA Rich who on behalf of the State of Alabama filed a civil forfeiture action on or about February 27, 2019. *Id*. at ¶¶ 27-33. On September 16, 2019, Plaintiff filed an answer in the civil forfeiture action. *See* Doc. 18-3.

Plaintiff filed the instant suit on September 23, 2019. *See generally* Doc. 1. Plaintiff asserts a proposed class of "All persons who have had their property seized by the City of Satsuma, Alabama, have not been charged with a crime, and have had a civil forfeiture action filed against them from four years prior to the filing of this action, to present." Doc. 1 at ¶40. Plaintiff asserts in Count 1 a claim brought pursuant to 42 U.S.C. § 1983 against the State Defendants for violations of the Fourth, Fifth, and Fourteenth Amendments seeking declaratory and injunctive relief. The gist of the argument is that the State has a policy and practice of seizing property indefinitely and having the City hold it while the civil forfeiture action proceeds. As a result, there is no meaningful opportunity to contest the retention of the property at a meaningful time before the hearing on the merits of the forfeiture. *Id*. at ¶¶ 48-55. In Count 2, Plaintiff asserts a claim brought pursuant to 42 U.S.C. § 1983 against the State Defendants for violations of the Eighth Amendment's prohibition against excessive fines. In Count 3, Plaintiff asserts against the City a conspiracy claim brought under 42 U.S.C. § 1983 and seeks damages. She states there was an agreement between the City and the State Defendants to violate Plaintiff's constitutional rights by seizing the Vehicle and instituting civil forfeiture proceedings. *Id*. at ¶¶ 64-70.

Initially the Defendants filed a joint motion to stay pending a ruling in an earlier-filed case in the Northern District of Alabama – *Sutton v. Marshall*, 4:19-cv-660-KOB (N.D. Ala. May 1, 2019) ("*Sutton I*"). *See* Docs. 9, 10. Plaintiff responded in opposition to the motion and Defendants filed their reply. *See* Docs. 13, 14. However, before the Court had the opportunity

to rule on the motion, the Defendants withdrew the request because the *Sutton I* ruling had been issued.  Subsequently, the State filed their combined answer and the motion for judgment on the pleadings.  *See* Docs. 17 – 19.  The City filed its motion to dismiss.  *See* Doc. 20.  Plaintiff filed her omnibus response in opposition to both motions.  *See* Doc. 25.  Defendants filed their respective replies.  *See* Docs. 26, 27.  At that time, the motions were fully submitted and ripe for review.[2]  On November 6, 2020, Defendants filed an unopposed motion to supplement their briefing based upon new developments in the civil forfeiture case.  *See* Doc. 30.  The Court granted the request and Defendants filed their respective supplemental briefs on November 23, 2020.  *See* Docs. 33, 34.  Though Plaintiff's response was due on December 7, 2020, she filed her response late on December 14, 2020. *See* Doc. 35; *see also* Doc. 38 ("corrected" version).  Defendants requested the response be stricken which the Court denied, but did give them an extension to file their respective replies.  *See* Docs. 36, 37.  The State filed its reply on December 29, 2020, and the City did not file a reply.  *See* Doc. 39.  Therefore, the motions are fully submitted and ripe for review.  The Court further determines that oral argument is unnecessary to resolve this matter.

The State asserts four primary arguments in its original motion for judgment on the pleadings.  *See* Doc. 19.  First, that the Court should abstain from this case pursuant to *Younger v. Harris* and its progeny.  Next that the Court's final judgment in the *Sutton I* case has preclusive effect on the claims in this case.  Finally, in the third and fourth arguments, the State asserts Plaintiff fails to state a claim in Count 1 and Count 2 against the State.  *Id*.  In the supplemental briefing, the State notes that the civil forfeiture action had concluded and the court

---

[2] Unfortunately, due to the COVID-19 pandemic, the Court fell behind on a number of civil cases given the increase in criminal and civil matters relating to covid-specific issues that required quick rulings.  At the point the Court intended to review and rule on the issue, the parties then requested the opportunity to file supplemental briefing.

ruled in Culley's favor on the Vehicle.  *See* Doc. 33.  The State repeats its assertion that the Court should abstain under *Younger* because the civil forfeiture case was still pending when this case was filed.  Next, the State argues the request for injunctive relief is moot and sovereign immunity bars retroactive relief against the State.  The State further argues that the claim is precluded by the now-final judgment in the civil forfeiture action.  Finally, the State argues that the injuries Culley alleges in Count 1 are self-inflicted and that Count 2 fails because the vehicle was not forfeited and no fine was imposed.  *Id*.

The City filed its motion to dismiss and a brief in support.  *See* Doc. 20.[3]  In the early part of the brief, the City adopts the grounds set forth in the State's motion.  Specifically, the City notes that Count 3 incorporates by reference the contentions in Counts 1 and 2 and alleges a conspiracy between the City and the State to violate Plaintiff's rights under the Fourth, Fourteenth, and Eighth Amendments.  The City argues that Count 3 is "entirely dependent upon the success of her claims of the declaratory and injunctive relief against the State."  *Id*. at 5.  Therefore, the City avers *Younger* would also apply to the allegations against it.  *Id*. at 4-7.  Further, since Plaintiff alleges a conspiracy, the City argues her claim fails because the underlying constitutional violation allegations fail.  *Id*. at 7-8.  Finally, the City asserts a conspiracy to enforce the law is not actionable.  *Id*. at 8-9.  In its supplemental brief, the City reasserts the same arguments in arguing that applying the *Younger* abstention doctrine is still appropriate and the conspiracy claim against the City fails.  *See* Doc. 34.

Plaintiff responded in opposition to the original motions and the supplemental motions.

---

[3] Because of the combined nature of the motion and brief, the pages set forth by the City do not align with those of the PDF.  When citing pages in this opinion, the Court utilizes the PDF page numbers since it is one comprehensive document on the docket sheet.

*See* Docs. 25, 38.[4]  In opposing the motion, Plaintiff first notes that the City was not a party to the *Sutton I* case and therefore *Sutton I* bears no relevance.  Moreover, the *Younger* abstention doctrine would also not apply for the same reason – there is no ongoing state court litigation between Plaintiff and the City in the underlying state action.  *See* Doc. 25 at 7-8.  Further along that same line, Plaintiff argues that the issues between this case and the underlying state action are not barred by issue preclusion (collateral estoppel) because the claims against the City distinguish it from both the underlying state case and the issues presented in *Sutton I*.  As a result, *Sutton I* also has no preclusive effect.  *Id*. at 8-12.  Plaintiff then turns to her argument on the reason *Younger* does not apply to the claims against the State.  Specifically, that the pendency of a civil forfeiture proceeding is no bar to this action, the federal relief sought does not interfere with the state civil forfeiture proceeding, the forfeiture proceeding does not provide Plaintiff the opportunity to present her constitutional defense to the continued impoundment of her vehicle *pendente lite*, and Ala. Code § 28-4-286 does not comport with due process.  *Id*. at 12-25.  Plaintiff next compares her case to one in the Second Circuit arguing that Count I should proceed on the merits.  *Id*. at 26 (citing *Krimstock*, 306 F.3d 40 (2d Cir. 2001).  Moreover, that due process requires a post-seizure hearing on the question of whether a vehicle may be retained *pendente lite* in a civil forfeiture action.  *Id*. at 27-28.  Plaintiff further avers that the State misses the mark on her assertion – she does not contest the original seizure of the Vehicle during the arrest of her son, but rather contests the State's continued possession of her car while the civil forfeiture action proceeds in violation of her due process rights.  *Id.* at 28-30.  Plaintiff then attempts to distinguish the caselaw relied upon by the Defendants by addressing each in turn.  *Id*.

---

[4] Plaintiff's supplemental response was untimely in that it was filed one week late.  *See* Doc. 35.  Later that same date, Plaintiff filed a "corrected" response.  *See* Doc. 38.  The Court reviewed both documents, but the latter document is clearly the controlling response as noted it the footnote of the corrected response when it states "[t]his filing subsumes, and replaces, and corrects that earlier filing."  *See* Doc. 38 at 2, n. 1.

at 30-35.   Plaintiff proceeds with her analysis of the constitutional due process claims applying *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  *Id*. at 35-39.  Finally, Plaintiff addresses her Eighth Amendment claim and states it is properly pled.  *Id*. at 39-42.

In her supplemental response, Plaintiff states that the Circuit Court of Mobile County's grant of summary judgment in favor of Plaintiff on the underlying civil forfeiture claim does not affect the claims against the City of Satsuma.  *See* Doc. 38 at 5-7.  Plaintiff next asserts that the City misapplies caselaw regarding an "ongoing state proceeding" and that "a court cannot abstain in favor of a non-existent State court proceeding" when the City was never a party to the underlying state civil forfeiture case.  *Id*. at 8.  Plaintiff further argues that though her individual claims may have been rendered moot by the civil forfeiture action and its resolution, the class claims for prospective injunctive relief should remain against the State because the claims are "inherently transitory."   *Id*. at 9-14.  Next, Plaintiff asserts her claims are not precluded by summary judgment in the underlying case and *res judicata* does not apply because the judgment was in her favor (as opposed to the State's favor).  Plaintiff avers that neither *res judicata* or claim preclusion bars this suit and issue preclusion doesn't apply because the two suits do not involve the same issue.  *Id*. at 14-17.  Next, Plaintiff asserts that the length of the constitutional deprivation has no bearing on its actionability in response to the State's argument to the fact Culley did not act sooner in filing her summary judgment motion in the civil forfeiture claim. Rather, Plaintiff states this is a claim unrelated to damages, but rather that it is unconstitutional for the State to impound property *pendente lite* without providing a prompt, post-seizure hearing on the issue of probable cause to impound the property and if any security is necessary, the least restrictive means.  *Id*. at 17-22.  Turning to the Eight Amendment claim, Plaintiff asserts that, as an innocent owner of the Vehicle, the deprivation of the property, even temporarily, is ultimately

a fine.  Further the claim of deprivation under the Eighth Amendment is inherently transient in the same way the due process claims are.  *Id*. at 22-25.  Finally, Plaintiff notes that conspiracy claim against the City further survives because the Complaint meets the requirements of Fed. R. Civ. P. 8 and is sufficiently specific to plead a concerted action between the City and the State. Plaintiff further disputes the assertion by the City that they cannot be held responsible for simply enforcing the law.  Plaintiff avers the City and the State's actions, in concert, deprived Plaintiff of her vehicle for months and may be found liable because they were enforcing unconstitutional statutory provisions and procedures.  In sum, the City started the unconstitutional process and ultimately profited from the scheme.  *Id*. at 26-30.

Both the State and the City filed their respective replies to the Plaintiff's omnibus response.  *See* Docs. 26, 27.  For the supplemental briefing, only the State filed a reply to the supplemental response.  *See* Doc. 39.  Both the motion for judgment on the pleadings and the motion to dismiss are fully briefed and ripe for the Court's review.  The Court finds that oral argument is unnecessary for resolution of the motions.

## IV.   DISCUSSION AND ANALYSIS

As noted above, a Rule 12(b)(6) motion and a Rule 12(c) motion functionally serve the same purpose.  So when the Court refers to a Rule 12(b)(6), it necessarily encompasses the review under Rule 12(c).

Typically, when faced with a 12(b)(6) motion to dismiss, a court must limit its consideration to the content of the complaint and any written instruments attached to the complaint as exhibits, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  However, the Eleventh Circuit has held "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion

into a Rule 56 motion." *Halmos v. Bombardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (citations omitted);[5] *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citation omitted) (stating court properly may take judicial notice of the pleadings and orders in another case, without "converting [the] motion to dismiss into a motion for summary judgment"). Therefore, the Court takes judicial notice of the documents from the underlying state civil forfeiture proceeding because they are public records that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

As a backdrop to the case at hand, the Court will discuss Alabama law on forfeiture proceedings. Under Ala. Code § 20-2-93(a)(5), a conveyance used "to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" drugs or other controlled substances is subject to forfeiture.[6] Law enforcement may seize property subject to forfeiture without process when instant to arrest. Ala. Code § 20-2-93(b)(1). When the property is seized in this manner, civil forfeiture proceedings shall be instituted "promptly." Ala. Code § 20-2-93(c), (d). Once proceedings have begun, a civil forfeiture defendant may reclaim the property if they can show that they did not know about the illegal acts and "could not

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court utilizes the version in effect at the time of the Vehicle's forfeiture. The Alabama legislature recently passed a new version which goes into effect on January 1, 2022.

have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use." ALA. CODE § 20-2-93(h). In short, the civil forfeiture defendant can assert the affirmative defence of innocent owner.

While the civil forfeiture action proceeds, the seized property is "deemed to be in the custody of the state, county, or municipal law enforcement agency." ALA. CODE § 20-2-93(d). However, an owner can also execute a bond to reclaim the property during the pendency of the forfeiture action. ALA. CODE §§ 20-2-93(h§), 28-4-287. The bond is "double the value of such property. *Id*. The Alabama Supreme Court recently reiterated that "§ 28-4-287 provides the exclusive means for obtaining seized personal property during the pendency of a forfeiture action." *State v. Two White Hook Wreckers*, ___ So.3d ___, ___, 2020 WL 7326386, at *2, 2020 Ala. LEXIS 183, at *9 (Ala. Dec. 11, 2020).

## A. *Younger* Abstention doctrine

The State and the City both assert that the Court should abstain from exercising jurisdiction over Plaintiff's claims pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), and its progeny.

The general rule is that a federal court has a "virtually unflagging obligation to exercise the jurisdiction given to them." *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). The *Younger* doctrine is "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Green v. Jefferson Cty Comm'n*, 563 F.3d 1243, 1251 (11th Cir. 2009) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)). While *Younger* involved state criminal proceedings, the Supreme Court subsequently determined that the abstention is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex Cty.*

*Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Therefore, abstention under *Younger* is appropriate when: (1) the federal proceeding would interfere with ongoing state judicial proceedings; (2) the state proceedings implicate important state interests; and (3) the plaintiffs have an adequate state remedy available. *31 Foster Children*, 329 F.3d at 1274-75 (citing *Middlesex Cty.*, 457 U.S. at 432, 102 S. Ct. at 2521). Courts must "assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id*. at 1279 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987)). "In addition, the Supreme Court has instructed that Younger only applies where the state proceeding at issue involves "orders that are uniquely in furtherance of the state courts' ability to perform their <u>judicial</u> functions . . . it has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action." *Green*, 463 F.3d at 1251 (citations omitted and emphasis in original).

When abstaining from exercising jurisdiction under *Younger*, "federal courts promote the value of comity between the states and the federal government and avoid unnecessary determinations of federal constitutional questions." *Liedel v. Juv. Ct. of Madison Cty.*, 891 F.2d 1542, 1546 (11th Cir. 1990). Further, as noted by the Eleventh Circuit, the state court proceeding is considered "ongoing" if it was pending at the time the plaintiff filed the federal complaint. *Id*. at 1546 n.6; *see also Cormier v. Green*, 141 F. App'x 808, 813 (11th Cir. 2005) (stating *Younger* applied to the date the federal complaint was filed even though there was no longer a pending state proceeding at the time of the motion to dismiss).

Based on this framework, the Court now turns to whether the *Younger* doctrine applies to the case at hand by applying the three factors.

Based on the filing date of this case, the state civil forfeiture action was in progress, thus there was an ongoing state court proceeding for the purposes of this analysis.  The fact that the case has resolved does not change that particular detail.  However, binding precedent clearly notes that the ongoing nature of a state proceeding is not enough to merit abstaining if the federal case will not interfere with the proceeding.  *31 Foster Children*, 329 F.3d at 1275.  In this case, there is no possibility of interference because the underlying state civil forfeiture proceeding has ended with judgment in Plaintiff's favor.  Thus, even if Culley were to prevail here and the Court were to issue her requested declaratory judgment, injunctive relief, and monetary damages, it would have zero effect on the original state action.[7]  As all three *Middlesex* factors must be met, the Court finds it need not address the remaining factors since the first fails.  Therefore, the Court declines to abstain under *Younger* and both motions are denied on that basis.

**B.    Preclusion**

The State Defendants assert two separate arguments on preclusion.  To start, between the original motion and the supplemental motion, the State asserts both claim and issue preclusion.  *Compare* Doc. 19 at 19 *with* Doc. 33 at 7.  The State defendants assert the issue of collateral estoppel through the *Sutton I* federal case and also preclusion through the now-final judgment in the underlying civil forfeiture proceeding.  Thus, the Court is looking at preclusion through both a federal case and a state case.  "The preclusive effect of a federal-court judgment is determined by federal common law."  *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001)).  When determining the preclusive effective of an Alabama

---

[7] As noted by our sister court in the Northern District of Alabama on this same issue, the Court has some concerns on whether the relief sought would effectively enjoin civil forfeiture proceedings, but finds it is unnecessary to address given the current decision on not abstaining.  *See* Civ. Act. No. 4:20-cv-91 (N.D. Ala. Apr. 6, 2021), Doc. 39, Memorandum Opinion; *see also* Doc. 42-2 in the instant case.

state court judgment, the Court must apply Alabama law. *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006). Therefore, when determining the preclusive effect of *Sutton I*, the Court looks to federal law and for the underlying civil forfeiture judgment the Court looks to state law.

### (1) Claim Preclusion

The State asserts that Culley's claims are precluded by the final judgment in the underlying state case. *See* Doc. 33 at 5-9. As noted above, the Court looks to Alabama law here. The Alabama Supreme Court has stated "[b]oth collateral estoppel and res judicata are affirmative defenses; thus, the party raising the defense has the burden of proving each element." *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 516 (Ala. 2002) (citations omitted). "Res judicata and collateral estoppel are two closely related, judicially created doctrines that preclude the relitigation of matters that have been previously adjudicated or, in the case of res judicata, that could have been adjudicated in a prior action." *Bond v. McLaughlin*, 229 So. 3d 760, 767 (Ala. 2017); *Ex parte Beck*, 988 So. 2d 950, 954 (Ala. 2007); *Lee L. Saad*, 851 So. 2d at 516. "The doctrine of res judicata, while actually embodying two basic concepts, usually refers to what commentators label 'claim preclusion,' while collateral estoppel . . . refers to 'issue preclusion,' which is a subset of the broader res judicata doctrine." *Bond*, 229 So. 3d at 767 (citations omitted).

The elements of *res judicata* are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. *Id*.; *Pendley v. Pendley*, 439 So. 2d 1, 3 (Ala. 1983) (citing *Wheeler v. First Ala. Bank of Birmingham*, 364 So. 2d 1190 (Ala. 1978)). However, as noted by Plaintiff in her supplemental response brief, this circumstance does not apply because

Culley was the prevailing defendant in her state case (not the plaintiff) as noted by <u>longstanding</u> Alabama caselaw.  *See Burdeshaw v. White*, 585 So. 2d 842 (Ala. 1991); *Maxcy v. Twilley*, 289 Ala. 681 (Ala. 1972).

> As a general rule, where a defendant has an independent claim against the plaintiff, such as might be either the basis of a separate action or might be pleaded as a set-off or counterclaim, he is not obliged to plead it in plaintiff's action, although he is at liberty to do so, and if he omits to set it up in that action, or if, although he introduces it in evidence in rebuttal of plaintiff's demand, it is not used as a set-off or counterclaim, this will not preclude him from afterward suing plaintiff upon it, in the absence of some statute to the contrary. *A.B.C. Truck Lines v. Kenemer*, 247 Ala. 543, 25 So.2d 511 (1946). But the rule does not apply where the subject matter of the set-off or counterclaim was involved in the determination of the issue in the former action in such wise that the judgment therein necessarily negatives the facts on which defendant would have to rely in order to establish his demand.

*Maxcy*, 289 Ala. at 683-84.  Further, the Alabama Supreme Court also states:

> The traditional res judicata case (frequently referred to as a claim preclusion) involves prior litigation between a plaintiff and a defendant, which is decided on the merits by a court of competent jurisdiction, and then a subsequent attempt by the prior plaintiff to relitigate the same cause of action against the same defendant, or perhaps to relitigate a different claim not previously litigated but which arises out of the same evidence.  Alabama law is well settled that this will not be allowed.  A valid, final judgment on the merits of the claim extinguishes the claim.  If the plaintiff won, the claim is merged into the judgment; if the defendant won, *the plaintiff* is barred from relitigating any matter which could have been litigated in the prior action.

*Burdeshaw*, 585 So. 2d at 844 (citations omitted and emphasis added).

Thus, the general rule is that *res judicata* does not apply to a prevailing defendant except under certain circumstances.  First, it would apply if a statute required the claim to be asserted in the first action.  *Maxcy*, 289 Ala. at 684 (citing *A.B.C. Truck Lines*, 247 Ala. 543).  The State has cited no such statute that required the claims to be asserted in the state civil forfeiture proceeding.  As such, this exception does not apply.

Next, *res judicata* would apply if "the subject matter of the set-off or counterclaim was

involved in the determination of the issue in the former action in such wise that the judgment therein necessarily negatives the facts on which the defendant would have to rely in order to establish his demand." *Id*.  The State does not address this particular matter and, it is not clear at this juncture that the judgment from the civil forfeiture proceeding establishes a fact that would necessarily defeat her current claims.  In fact, it would appear to the contrary.  Therefore, this exception does not apply.

Finally, Alabama law also provides that "failure to assert a compulsory counterclaim bars the assertion of that claim in another action."  *Brooks v. Peoples Nat'l Bank*, 414 So. 2d 917, 920 (Ala. 1982); *see also Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co.*, 466 So. 2d 83, 90-91 (Ala. 1985) ("The counterclaim rule is based on the equitable principle of collateral estoppel. ARCP 13, Committee Comments.  The principle bars parties in a subsequent proceeding from asserting any matter which might or ought to have been litigated in a prior proceeding. But the principle of collateral estoppel will not bar assertion of a claim which the parties agreed to leave to a subsequent proceeding.").  Turning to Ala. R. Civ. P. 13(a), it states about compulsory counterclaims, "relitigation of the claim may be barred by the doctrines of res judicata or collateral estoppel by judgment *in the event certain issues are determined adversely to the party electing not to assert the claim*.).  ALA. R. CIV. P. 13(a) (emphasis added).  Here, the issues were not determined adversely to Culley – rather they were determined in her favor.  So, this exception does not apply.

The State does nothing to address the prevailing defendant discussion in its supplemental briefing and therefore failed to carry its burden of establishing it is entitled to the affirmative defense of claim preclusion under Alabama law.

**(2) Issue Preclusion**

Preclusion defined by claim preclusion and issue preclusion which are collectively called "res judicata." *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171. "The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Id.* (citing *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 598, 68 S. Ct. 715, 92 L. Ed. 898 (1948)). The State also asserts issue preclusion (collateral estoppel) based on the results in the *Sutton I* case out of the Northern District of Alabama. *See* Doc. 19 at 18-22 (citing *Sutton I*, Civ. Act. No. 4:19-cv-660). As it is a federal court judgment, the Court looks to federal law.

"Collateral estoppel, or issue preclusion, bars the relitigation of an issue that was litigated and resolved in a prior proceeding." *Wachovia Bank N.A. v. Tien*, 658 F. App'x 471, 473-74 (11th Cir. 2016) (citing *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998)).

> In order to rely on collateral estoppel, the party raising the doctrine must show that: (1) the present issue is identical to an issue in a previous proceeding; (2) the issue was actually litigated in the previous proceeding; (3) resolution of the issue must have been an essential part of the judgment in the previous proceeding; and (4) the party against whom the doctrine is being raised must have had a full and fair opportunity to litigate the issue in the first proceeding.

*Id.* at 474.

Since this Court has rejected the application of the *Younger* doctrine, the reliance on the original *Sutton I* case is inappropriate and the Court is not bound by the application of the doctrine by a sister court against the State Defendants. Further, the Court agrees with the Plaintiff's response wherein she states that the instant case includes claims against the City, so

there are some differences between the case at hand and *Sutton I.*

However, the biggest contention here is element four – whether Culley had a full and fair opportunity to litigate the issue in the first proceeding.  The State acknowledges that a person who was not a party to a prior lawsuit generally would not satisfy this element.  *See* Doc. 19 at 20.  However, they also note that *Taylor* enumerated six exceptions to that general rule.  *Id*. at 20-21.  Thus, the Court looks at whether any of the exceptions apply.

> A court may  apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.

*Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (citing *Taylor*, 553 U.S. at 893-895, 128 S. Ct. at 2170-2173).

The State asserts that the third exception is applicable here in that Culley was adequately represented by Plaintiff Sutton who was a party to *Sutton I*.  Specifically, the State argues that *Sutton I* was also brought as a purported class action and the same counsel represents both plaintiffs.  The State does acknowledge that no state-wide class was certified in *Sutton I*, but glosses over the issue by seemingly indicating that the lack of certification is irrelevant.  The Court disagrees.  Had the case been certified, then the Court certainly would have agreed that Sutton adequately represented Culley (and other plaintiffs) in the lawsuit.  However, the lack of certification in the *Sutton I* case necessarily means that the *Sutton I* case only applied to the plaintiff in that case – as discussed in further detail in the next section.  The fact they shared a counsel does not negate that simple fact.  Therefore, the Court finds that collateral estoppel (issue preclusion) does not apply here.

The State makes a passing reference to the "first filed rule" in its original motion, however, the only context is in the discussion of collateral estoppel. *See* Doc. 19 at 19-20. The Court declines to extend any further discussion given its rejection of the collateral estoppel argument.

### C.       Class Claims

In the supplemental briefing, the State also asserts that because Plaintiff's claims are moot, there can be no surviving class claims. *See* Doc. 33 at 6-7. Plaintiff argues that the class claims would still proceed because they are inherently transitory. *See* Doc. 38 at 9-14. The State argues that the claims are not inherently transitory and instead are moot.

Article III jurisdiction is premised upon the presence of a legally cognizable interest in the outcome – i.e., standing. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 726, 184 L. Ed. 2d 553 (2013). That requirement exists not only at the time the complaint is filed, but at all stages of the litigation. *Id*. "A case becomes moot -- and therefore no longer a Case or Controversy for purposes of Article III -- when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id*. at 91, 133 S. Ct. at 726-27 (citation and internal quotations omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id*. (quoting *Alvarez v. Smith*, 558 U.S. 87, 93, 130 S. Ct. 576, 175 L. Ed. 2d 447 (2009)).

Plaintiff's personal stake in the class claims is extinguished given that she was successful in the underlying forfeiture case, has received the Vehicle back, and is not entitled to compensatory damages against the State. *See Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996). However, a certified class "acquires a legal status separate from the

interest asserted by the named plaintiff." *United States v. Sanchez-Gomez*, ___ U.S. ___, 138 S. Ct. 1532, 1538, 200 L. Ed.2d 792 (2018) (internal quotations omitted).   "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013).   Therefore, "certification could potentially 'relate back' to the filing of the complaint," before the named plaintiff's claim became moot, allowing the named plaintiff to proceed on behalf of the class.  *Id*.  (citations omitted).  Specifically, "the relation-back doctrine may apply in Rule 23 cases where it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."  *Id*. (internal quotations and citations omitted).  In sum, "a suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has properly been certified," "this general rule must yield when the district court is unable reasonably to rule on a motion for class certification before the individual claims of the named plaintiffs become moot." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1045 (5th Cir. 1981).[8]  When "the issue sought to be litigated escapes full appellate review at the behest of any single challenger," the Court explained, the case "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs."  *Sosna v. Iowa*, 419 U.S. 393, 401, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975).

---

[8] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981); *see also Walker v. Fin. Recovery Servs.*, 599 F. App'x 359, 361 n.1 (reiterating that *Zeidman* was still binding precedent in the Eleventh Circuit).

Many of these cases pertain to situations where there was a pending motion for certification. That is not the case at hand. Plaintiff's complaint identifies the class definition she requests and a brief discussion on the matters that would be ultimately addressed within a motion for certification. *See* Doc. 1 at 11-13. Therefore, assuming without deciding that the claims are inherently transitory as described in *Zeidman*, the Court determines it may still look to the dispositive motions. *See, e.g., Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1289 (M.D. Ala. 1998) (noting that "the vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification"); *Mitchell v. Indus. Credit Corp.*, 898 F. Supp. 1518, 1537 (N.D. Ala. 1995) ("[U]nder proper circumstances, as exist in this case, where early resolution of motions for summary judgment would save the court and parties from needless and costly litigation and where the parties would not suffer significant prejudice it would seem permissible and not an abuse of discretion for the court to rule on the motions for summary judgment without deciding the class certification issue."). Further, advisory committee notes for Rule 23 indicate that "[o]ther considerations may affect the timing of the certification decision. The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." FED. R. CIV. P. 23(c)(1)(A) advisory committee's note to 2003 amendment. Thus, a court does not abuse its discretion in ruling on a dispositive motion before ruling on a motion for class certification. *See Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 896 (8th Cir. 2014); *Wright v. Schock*, 742 F.2d 541, 543-44 (9th Cir.1984). This is especially true where a defendant essentially waives the protections of Rule 23 by seeking a ruling on the merits of the class action claims prior to certification. *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92-93 (D.C. Cir.2001) (reversing the usual order of disposition where rendering an easy

decision on an individual claim avoids an unnecessary and harder decision on the propriety of certification). Such is the case here. The Defendants have essentially waived the right to bind putative class members. Therefore, the Court finds it prudent to resolve the motion for judgment on the pleadings and motion to dismiss prior to addressing any class matters.

**D.     Violation of Right to a Post Deprivation Hearing (Count I against the State)**

Count I is brought pursuant to 42 U.S.C. § 1983 and asserts three separate constitutional violations under the Fourth, Fifth, and Fourteenth Amendments. Culley states repeatedly throughout her complaint and briefs that this case is not about the initial seizure or even the ultimate decision at trial in civil forfeiture proceedings. Rather that the State in conjunction with the City seizes vehicles and other property and retains custody of it during the civil forfeiture action. *See, e.g.,* Doc. 1 at 5. Specifically, there is not a prompt post-seizure hearing on the Vehicle. Culley seeks declaratory and injunctive relief against the State.

As a preliminary matter, Plaintiff merely glosses over Ala. Code § 28-4-287 and its opportunity to "execute a bond in double the value of such property" to have it returned during the pendency of the civil forfeiture proceedings. There is no reference to it in the complaint and in fact, Plaintiff states to the contrary that there is no such process. *See* Doc. 1 at 15-16. In the response to the State's motion, Plaintiff states the following: "[t]his predetermined bond amount does not comport with due process. First, the ability to post security at an arbitrarily determined amount does not reach Ms. Culley's right to prove under the Statute that she had no knowledge or involvement in the underlying crime." *See* Doc. 25 at 23. Plaintiff also states, in the context of her Eighth Amendment argument that "the arbitrary 'double value' bond amount does not withstand 8th Amendment scrutiny…In short, an arbitrary 'double value' bond amount gives no due process as to the proper amount of the bond." *Id.* at 25. Beyond those statements, Plaintiff

does not appear to challenge the statute by arguing that the payment of *a bond* is unconstitutional. Rather, Plaintiff focuses on the lack of a prompt post-seizure probable cause hearing and does a limited argument stating, "the posting of a bond for double the amount of the value of the vehicle is, by definition excessive."  *Id*.

**(1) Fourth Amendment**

Turning to Culley's Fourth Amendment claim in Count I, she alleges a "policy and practice" of failing to provide a prompt post-seizure probable cause hearing.  *See* Doc. 1 at 14. More specifically, Culley asserts "the State has a policy and practice of seizing the property indefinitely, and having the City of Satsuma, Alabama hold it, while the civil forfeiture action proceeds when it knows, or should know, that there is no meaningful opportunity to contest the retention of the property at a meaningful time before an ultimate hearing on the merits of forfeiture, which takes months, if not years."  *Id*. at 14-15.  Culley argues this violates the Fourth and Fourteenth Amendments of the Constitution.

The Fourth Amendment provides that "[t]he right of the people to be secure in  their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. CONST. AMEND. IV.   In short, it protects individuals from unreasonable search and seizure."  *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001).

Plaintiff does not contest the initial seizure incident to arrest.  Rather, she only challenges the retention of the vehicle during the pendency of the forfeiture proceedings.  This falls outside the scope of the Fourth Amendment.  "A complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment."  *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009); *see also Caldwell v. Fort Lauderdale Airport*

*Task Force*, 673 F. App'x 906, 910 (11th Cir. 2016) (quoting *Case*) ("We have stated that '[a] complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment.'").   Therefore, the motion for judgment on the pleadings is due to be granted as to the Fourth Amendment Claim.

### (2) Fifth Amendment

To start, Plaintiff essentially concedes in a footnote that the Fifth Amendment claims cannot stand. Specifically, she states:

> Plaintiff concedes that the current state of the law is 5th Amendment claims have not been incorporated to apply to the states.  This, however, is of no practical effect due to the existence of a due process claim under the Fourteenth Amendment.  The 11th Circuit has held that, "our analysis is the same under either because the reaches of [Due Process Clauses of the] Fourteenth and Fifth Amendments  are coextensive." *Walker v. R.J. Reynolds Tobacco Co.*, 737 F.3d 1278 (11th Cir. 2013), *quoting Roderiguez-Mora v. Baker*, 792 F.2d 1524, 1526 (11th Cir. 1986).

Doc. 25 at 28, n. 5.  The Court agrees that because these claims are against the State and not the federal government, the Fifth Amendment does not apply.  However, the Court also agrees that the due process clauses of both are generally reviewed in a similar/same manner.  Therefore, to the extent Plaintiff originally asserted Fifth Amendment claims, they necessarily fail, but instead are reviewed under the Fourteenth Amendment.

### (3) Fourteenth Amendment

As noted previously in the context of the Fourth Amendment claim, Culley does not challenge the initial seizure, only the retention of the Vehicle during the civil forfeiture proceedings.   Culley asserts that the lack of a prompt post-seizure probable cause hearing violates the Fourteenth Amendment's due process clause.  *See* Doc. 1 at 15.  She further states "defendants in civil forfeiture actions are given no opportunity to show, at a meaningful time, that there is a less restrictive way for the State to secure the property, such as the posting of a

bond." *Id*.  "Moreover, under the Civil Forfeiture Act, there is no provision for a prompt hearing to consider the posting of a bond as security for the property subject to the civil forfeiture action, which would be a much less restrictive way to secure the State's interest in the property, pendente lite." *Id*. at 15-16.  In her response to the original motions, Culley reiterates that same discussion when she states:

> The issue is that Ms. Culley has been deprived of her vehicle from the time it was seized, through the filing of the civil forfeiture action, and has no remedy to maintain possession of her automobile during the pendency of that action.  Ms. Culley does not claim that the action was not instituted promptly, or that the State has no right to proceed with the forfeiture action.  She claims that it is a denial of her right to due process for the State to hold her vehicle during the pendency of that action, without making a probable cause showing that she had some connection to the crime, and that there is no less restrictive way for the State to secure the vehicle during the pendency of the proceedings.

Doc. 25 at 32.

The Court notes at the outset that these statements are factually and legally incorrect.  As discussed above, Alabama state law provides the opportunity to "execute a bond in double the value of such property" to have it returned during the pendency of the civil forfeiture proceedings.  ALA. CODE § 28-4-287.  Further, as noted by the Alabama Supreme Court in 2020, "§ 28-4-287 provides the exclusive means for obtaining seized personal property during the pendency of a forfeiture action."  *Two White Hook Wreckers*, ___ So.3d at ___, 2020 WL 7326386 at *2, 2020 Ala. LEXIS 183 at *9.  Thus, there is a process by which Culley could have reclaimed the Vehicle during the pendency of the civil forfeiture case.  Whether because she was unaware or by design, this was ultimately a path taken by the Plaintiff.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon v.*

*Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990) (emphasis in original). The proper inquiry to determine whether due process has been satisfied requires a court to ask two questions: (1) what process the government has provided, and (2) whether it was constitutionally adequate. *Id*. at 126, 110 S. Ct. at 983. The parties are in conflict on which standard and test applies to the case here to satisfy that inquiry. Plaintiff asserts that the procedural due process claim is governed by *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), while the State asserts the claim is governed by *Barker v. Wingo*, 407 U.S. 415, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

After reviewing the parties' arguments and the caselaw cited, the Court finds that it is bound by the Eleventh Circuit's decisions in *Gonzales v. Rivkind*, 858 F.2d 657 (11th Cir. 1988) and *Nnadi v. Richter*, 976 F.2d 682 (11th Cir. 1992) which therefore mandates the use of the test established under *Barker*.

In *Gonzales*, the Eleventh Circuit relied primarily on two Supreme Court decisions in its determination: *United States v. Von Neumann*, 474 U.S. 242, 106 S. Ct. 610, 88 L. Ed. 2d 587 (1986) and *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983). The Eleventh Circuit stated

> Given the teaching of *$ 8,850* and *Von Neumann*, we must conclude that, because a claimant of a vehicle seized under 8 U.S.C. sec. 1324 has the opportunity to challenge the government's probable cause determination in a forfeiture proceeding, that procedure, if timely, affords a claimant of seized property all process to which he is constitutionally due. *See generally, United States v. U.S. Treasury Bills Totaling $ 160,916.25 and U.S. Currency Totaling $ 2,378.75*, 750 F.2d 900 (11th Cir.1985) (implicitly presuming that opportunity for hearing on forfeiture of funds under 21 U.S.C. sec. 881(a)(6) met due process requirement and applying *Barker* criteria to determine whether timing [*662] of hearing violated due process); *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986) (in case involving forfeiture of proceeds traceable to narcotics transaction, due process did not entitle claimants to probable cause hearing in advance of forfeiture trial).

*Gonzales*, 858 F.2d at 661-62.   Of note, the Eleventh Circuit specifically cited the Second Circuit's statement that due process did not entitle claimants to a probable cause hearing in advance of the forfeiture trial.   *Id*. (citing *Banco Cafetero*, 797 F.2d 1154).   In analyzing *$8,850* and *Von Neumann*, the *Gonzales* determined that "the availability of a timely postseizure hearing fulfills the requirements of due process."   *Id*. at 661.

Other Eleventh Circuit cases have also applied *Barker* in the context of retention of property during forfeiture proceedings.   In *United States v. Bissell*, 866 F.2d 1343 (11th Cir. 1989), several criminal defendants argued that several seized assets were being wrongfully retained which prevented them from hiring counsel of their choice.   The Eleventh Circuit specifically held that "[w]e conclude that the *Barker* test, as described in *United States v. $8,850*, applies here."   *Bissell*, 866 F.2d at 1354.   The point was further reiterated in *United States v. Kaley*, 579 F.3d 1246 (11th Cir. 2009), when the Eleventh Circuit, acknowledging *Bissell*, applied the *Barker* test in another case involving pre-trial restraint of assets in the context of a choice of counsel issue.   *Kaley*, 579 F.3d at 1260.

Turning now to the application of *Barker*, the Supreme Court established a four factor test to determine when government delay has abridged the right to a speedy trial.   *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192.   The test involves weighing (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *$8,850*, 461 U.S. at 563-65; *see also Nnadi*, 976 F.2d at 687 ("The Supreme Court has set forth a four-part test for determining whether an unreasonable delay has transpired between seizure of forfeitable property and a *final hearing* concerning the ultimate disposition of the property seized." (emphasis added)).   Culley provides no analysis on the *Barker* test, but rather merely disputes its application.   *See* Doc. 25 at 30-35; Doc. 38 at 17-18.   When applied, it is clear that

Plaintiff's due process claims fail as a matter of law when considering the second and third factors.  Alabama law provides a mechanism to regain possession of the vehicle through the bond.  Further, Plaintiff herself did nothing to press forward on the underlying forfeiture case. The Vehicle was seized on February 17, 2019, the State initiated forfeiture proceedings shortly thereafter, and Culley did not proceed with the bond nor any pleadings requesting the state court set the matter for hearing.  Rather, the court *sua sponte* set the case for status conference in September 2020 to move the case along.  It was only then did Culley file her motion for summary judgment on September 21, 2020, which was granted on October 30, 2020.  Therefore, while perhaps not solely responsible for the delay in proceedings, Plaintiff played a significant role.  Moreover, again Plaintiff fails to even discuss why she did not follow the bond procedure to regain possession of her car.   Therefore, her claims fail as a matter of law under the *Barker* analysis.

However, even if the Court were in error to solely look to *Barker* and were to apply the test Plaintiff requests under *Mathews*, her claim would still fail.  Those three factors are: (1) the private interests affected; (2) the risk of erroneous deprivation through the procedures used, and the value of other safeguards; and (3) the governmental interest.  *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903.

"The deprivation of real or personal property involves substantial due process interests." *Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002) (citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993)).  Moreover, there is little debate that a person has an important interest in their vehicle; thus, the crux of the argument relies upon the second and third factors.  *See Serrano v. Customs & Border Patrol*, 975 F.3d 488, 497 (5th Cir. 2020).

The second factor is the risk of erroneous deprivation through the procedures used. *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903. Culley provides little analysis on this factor except to cite *Krimstock* and its statement that "the risk of erroneous deprivation that is posed to innocent owners is a substantial one." Doc. 25 at 36 and Doc. 38 at 21 (both quoting *Krimstock*, 306 F.3d at 58). Culley goes no further beyond that statement. However, there is nothing in this statement that binds <u>this</u> Court to that statement without a further look at the particular circumstances arising under the Alabama law. This includes all the procedures of the state forfeiture laws including the availability of alternate remedial processes which should be weighed and balanced. In the case at hand, after the initial seizure during arrest, there are multiple points of checks and balances. After the seizure, the State is notified of the seizure and has the opportunity to investigate the facts and laws to independently determine whether to initiate forfeiture proceedings. *Cf. United States v. One 1971 BMW 4-Door Sedan*, 652 F.2d 817, 821 (9th Cir. 1981) ("The risk of an erroneous seizure [is further] minimized by the duty of the United States Attorney immediately after notification of the seizure to investigate the facts and laws and independently to determine whether initiation of forfeiture proceedings [is] warranted."). And even after the decision is made to initiate forfeiture proceedings, a claimant such as Culley, still has the ability to seek the return of the property by paying the bond and filing a request with the court for an expedited proceeding to assert the innocent owner affirmative defense. Thus, when examining the circumstances of <u>this</u> statute, the second *Mathews* factor does not favor the Plaintiff as there are constitutionally adequate processes in place for a claimant to get the Vehicle back. Therefore, this factor favors the State.

Finally, the Court looks to the third *Mathews* factor – the governmental interest – which in many respects is tied to the second factor in analysis. The third factor specifically requires the

consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903.   Again for this element, Plaintiff relies almost exclusively on *Krimstock*, but even there, the quote provided undercuts her own argument.   *See* Doc. 25 at 37.  Specifically, Plaintiff acknowledges that the analysis requires the consideration of other less restrictive means and quotes *Krimstock*.  *Id.*   However, even within that quotation, the Second Circuit states "[t]o ensure that the City's interest in forfeitable vehicles is protected, claimants could post bonds, or a court could issue a restraining order to prohibit the sale or destruction of the vehicle."   *Krimstock*, 306 F.3d at 65.   In her own response, Plaintiff acknowledges"[i]f a bond is posted for the full value of the vehicle, there is little risk."  Doc. 25 at 37.  Plaintiff never discusses the application of Ala. Code § 28-4-287 allows the claimant to "execute a bond in double the value of such property" to regain it during the pendency of the proceedings.  Even the Second Circuit acknowledged that the posting of a bond may satisfy the due process requirements.  *Krimstock*, 306 F.3d at 65.  Therefore, of importance in <u>this</u> case (as opposed to Plaintiff's argument), there is a means to seek the return of seized property under the statute in question.  Much like the Fifth Circuit discussed in *Serrano*, the Court cannot ignore the context of the underlying seizure:

> The Government's interest in preventing the unlawful exportation of munitions, drugs, and other contraband is significant.  *See, e.g., Hernandez v. Mesa*, 140 S. Ct. 735, 746, 206 L. Ed. 2d 29 (2020) ("One of the ways in which the Executive protects this country is by attempting to control the movement of people and goods across the border."); *Lee v. Thornton*, 538 F.2d 27, 31 (2d Cir. 1976) ("There is an extremely important government interest in policing the passage of persons and articles into the country across its borders.").  Further, Serrano's property was subject to forfeiture because the agents believed that the truck was used in an attempt to illegally export munitions from the United States, in violation of federal law.  The Government's retention protects its interest in the seized vehicle.  Additionally, a significant administrative burden would be placed on the Government if it was required to provide prompt post-seizure hearings in

every vehicle seizure.

*Serrano*, 975 F.3d at 500.  Much like the case at hand, the initial seizure related to the arrest of Culley's son for drug related activity.  The burden on the State to conduct extra proceedings would present an undue significant burden, especially in light of the ability of a claimant to reclaim the property through the bond process.  The end result is that this factor favors the State.

Plaintiff relies heavily on *Krimstock*, 306 F.3d 40, in her analysis.  However, even there, the Second Circuit did not go as far as Plaintiff implies.  On the second *Mathews* factor, the court noted the city's victory was now "in light of the comparably greater risk of error that is posed to innocent owners, the City's direct pecuniary interest in the outcome of the forfeiture proceedings, and the lack of adequate recompense for losses occasioned by erroneous seizure of vehicles."  *Id*. at 64.  For the third factor, the court discounted the city's reasoning that it has an interest in (1) protecting the property from "being sold or destroyed before a court can render judgment in future forfeiture  proceedings," (2) maintaining custody in order to preserve in rem jurisdiction, and (3) preventing the seized vehicle from being used as an instrumentality in future DWI acts.  *Id*. at 64-67.  In determining that a post-seizure, pre-judgment hearing was necessary, the court also noted that such a hearing would allow a claimant "an early opportunity to test the probable validity of further deprivation, including probable cause for the initial seizure, and to ask whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting the vehicles from sale or destruction pendente lite."  *Id*. at 68. Therefore, while the court found a hearing may be needed when discussing the deprivation from the New York seizure law, it also noted that other measures may satisfy the legitimate interests of the city.  In short, its holding was specific to that particular law and not the broader concept Plaintiff espouses that all cases require a post-seizure, pre-forfeiture probable cause hearing.  In

the instant case, a bond would satisfy that concern while also returning the vehicle to the claimant.  Finally, even to the extent *Krimstock* intended such a holding, it is not binding on this Court.

While the Court agrees that a vehicle owner has a significant interest in regaining the vehicle, in the case at hand, the Court finds that is insufficient to maintain the claim.  "[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *see also Zinermon*, 494 U.S. at 127, 110 S. Ct. at 984 (stating same).  Further, the Supreme Court recognized that "implicit" in its "discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, *without more*, provides the postseizure hearing required by due process to protect [claimant's] property interest in the car." *Von Neumann*, 474 U.S. at 249, 106 S. Ct. at 614 (emphasis added).  Moreover, the Court has not found a Supreme Court case or an Eleventh Circuit case that requires an additional post-seizure, pre-forfeiture judicial hearing.  Even when analyzing the Alabama process under Plaintiff's own requested analysis of *Mathews*, the claims still fail and merit dismissal.

## E.     Excessive Fine under Eighth Amendment (Count II against the State)

Count II is also brought pursuant to § 1983 and asserts violation of the Eighth Amendment saying that Culley, who was not charged with a crime, had her Vehicle retained without due process, has been fined by the State because the property was seized, and even if she gets it back through the civil forfeiture process was deprived of the property in the meantime.  Plaintiff claims this forfeiture, even if brief, is excessive under the Eighth Amendment. and seeks declaratory and injunctive relief.  Plaintiff also argues that "the arbitrary 'double value' bond amount does not withstand 8th Amendment scrutiny…In short, an arbitrary 'double value' bond

amount gives no due process as to the proper amount of the bond."  Doc. 25 at 25.  It is not entirely clear whether Plaintiff argues that the payment of *a bond* is unconstitutional in civil forfeiture proceedings.  Within back to back sentences, Plaintiff states "[i]n such a case, any amount of bond is excessive because the State could make no showing that it is entitled to keep the vehicle **at all**.  In such a case, the posting of a bond for double the amount of the value of the vehicle is, by definition excessive."  *Id*.  However, Plaintiff discusses this in the context of her due process claim which as the Court already determined fails.  In the discussion on her Eighth Amendment claim, Plaintiff does not go into further detail nor cite to cases for that proposition.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. AMEND VIII.  The Eighth Amendment is applicable to the states through the Fourteenth Amendment. *Timbs v. Indiana*, ___ U.S. ___, 139 S. Ct. 682, 687, 203 L. Ed. 2d 11 (2019).  Much like the *Timbs* case, "[d]irectly at issue here is the phrase 'nor excessive fines imposed,' which limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."  *Id*. (citations omitted and internal quotations omitted).  In the *Timbs* case, the Supreme Court also reiterated its holding from *Austin v. United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L.Ed.2d 488 (1993), that "civil *in rem* forfeitures fall within the Clause's protection when they are at least partially punitive."  *Id.* at 689.

Thus, looking at the alleged facts at hand, assuming them to be true, and through the limited lens of a motion to dismiss/judgment on the pleadings, the Court must decide whether the retention of the Vehicle during the pendency of the civil forfeiture proceedings constitutes an "excessive fine" under the Eighth Amendment.

Culley cites no caselaw that indicates the temporary deprivation of the Vehicle can

constitute a fine under the Eighth Amendment.  She merely cites to the *Timbs* and *Austin* case which establish that the Eighth Amendment applies to civil forfeiture proceedings in general. However, both cases relate to the ultimate forfeiture of the property – not the detention during proceedings.  Thus, her briefing glosses over the actual issue at hand and jumps straight to a proportionality discussion.[9]  The State's briefing is more on point.

"The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."  *Austin*, 509 U.S. at 609-10, 113 S. Ct. at 2807 (emphasis and citation omitted).  "Forfeitures -- payments in kind -- are thus 'fines' if they constitute punishment for an offense."  *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S. Ct. 2028, 2033, 141 L. Ed. 2d 314 (1998).  The Court has found no caselaw that indicates that the prejudgment retention of property constitutes a payment (cash or in kind) – all caselaw found by this Court discusses it in the context of a criminal or civil forfeiture judgment.  This may be a novel approach by the Plaintiff, but as it is an ultimate legal determination, the Court must determine whether she states a claim for which relief may be granted to survive the motion for judgment on the pleadings.

Plaintiff cites no cases that support the view that requiring the posting of a bond during forfeiture proceedings violates due process.  Rather, the Court finds that longstanding caselaw approves the constitutionality of requiring bonds, even in the context of forfeiture proceedings. *See, e.g., Arango v. Dep't of the Treasury*, 115 F.3d 922, 929 (11th Cir. 1997) (holding that the bond requirement in the federal asset forfeiture statute was designed to promote "more efficient and less costly administrative forfeitures"); *Gladden v. Roach*, 864 F.2d 1196, 1200 (5th Cir.

---

[9] Plaintiff cites *United States v. Kajakajian*, 521 U.S. 321, 324 (1998) in her brief.  *See* Doc. 25 at 41.  However, the Court has found no such case and the citation goes to another Supreme Court case that has no relevance to the issues at hand.  Rather the Court presumes it to be a typographical error and that Plaintiff intended *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S. Ct. 2028, 2033, 141 L. Ed. 2d 314 (1998).

1989) (determining that the payment of a bond as a precondition for release following arrest for a non-jailable offense does not constitute a due process violation).   Moreover, at no point does Plaintiff claim an inability to pay such a bond as required under Alabama law nor did she seek an expedited hearing with the state court arguing such.   *See Arango*, 115 F.3d at 929; *see also Wren v. Eide*, 542 F.2d 757, 763 (9th Cir. 1976) (holding that "the fifth amendment prohibits the federal government from denying the opportunity for a hearing to persons whose property has been seized and is potentially subject to forfeiture solely because of their inability to post a bond").   The Court will not expand Plaintiff's assertions and declines to address a claim not raised especially as her individual claim has been rendered moot by her success on the merits of the state forfeiture case with the return of the Vehicle.

Ultimately, the Court cannot find that there is a legal basis for Plaintiff's Eighth Amendment claim, especially as ownership never changes hands in light of the civil forfeiture results in Culley's favor.   Although she did not have access to the Vehicle during the pendency of the proceedings, that was much by her own design than by chance.   As previously noted, Plaintiff could have posted bond in accordance with Ala. Code § 28-2-93(h).   Had she done so, no further deprivation would have occurred in light of her success on the merits.   Rather, the State and the City did exactly what the forfeiture statute required of them after the initial seizure – institute civil forfeiture proceedings and hold the property until the resolution since bond was not sought.   Specifically, state law permits the State and the City to (1) Place the property under seal; (2) Remove the property to a place designated by it; (3) Require the state, county, or municipal law enforcement agency to take custody of the property and remove it to an appropriate location for disposition in accordance with law; and (4) In the case of real property or fixtures, post notice of the seizure on the property, and file and record notice of the seizure in

the probate office.  ALA. CODE § 20-2-93(d).  Once the property has been forfeited <u>only then</u> may the State and the City use or sell the property.  *See* ALA. CODE § 20-2-93(e).

The Court agrees with the State's briefing that an anticipated fine does not present a ripe claim.  "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine."  *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995).  "Challenges under the Excessive Fines Clause are also generally not ripe until the actual, or impending, imposition of the challenged fine."  *Id*. (citation omitted); *see also Pettway v. Marshall*, Civ. Act. No. 5:19-CV-1073-KOB, 2020 U.S. Dist. LEXIS 125429, *13-14, 2020 WL 4016057, *5-6 (N.D. Ala. Jul. 16, 2020) (holding claim was not ripe when funds were merely frozen during civil forfeiture proceedings).

Thus, when Plaintiff filed her complaint, the Eighth Amendment claim was not ripe. Furthermore, the claim is now also moot since the forfeiture action results were in her favor and never resulted in the imposition of a forfeiture.  Therefore, Culley's Eighth Amendment excessive fines claim fails and the motion for judgment on the pleadings is granted on this basis.

**F.    Conspiracy (Count III against the City)**

In Count III, Culley asserts a claim for conspiracy under § 1983 against the City alleging that there is an agreement between the City and the State to violate her constitutional rights. Culley specifically states there is an agreement that the City seizes a vehicle incident to arrest, contacts the State defendants who, in turn, institute a civil forfeiture action.  As a result, the City keeps the seized vehicle and refuses to return it while the civil forfeiture action proceeds.

As the City also asserts arguments under *Younger* and its progeny, the motion to dismiss is rejected for the for the same reason discussed previously.  *See* Doc. 20 at 4-7;[10] Doc. 34 at 3-4.

---

[10]  The Court again uses the pages in the PDF document since the page numbers on the consolidated motion and brief result in page numbers that do not match.

However, the City also asserts that if the direct constitutional claims against the State fail, the conspiracy claim necessarily fails. *Id.* at 7-8; Doc. 34 at 4-7. The Court will turn to the analysis on that assertion.

To establish a viable conspiracy claim under §1983, the Plaintiff must allege three elements: (1) a violation of her federal rights; (2) an agreement among the Defendants to violate such rights; and (3) an underlying actionable wrong. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260-62 (11th Cir. 2010). Therefore, Plaintiff must establish an underlying violation of her constitutional rights to sustain a § 1983 conspiracy claim. *See Spencer v. Benison*, 5 F.4th 1222, 1234 (11th Cir. 2021) (citations omitted); *see also Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1288 (11th Cir. 2009) (citing *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998)) ("a plaintiff must demonstrate a denial of constitutional rights to sustain a conspiracy claim under § 1983").

As the Court has already determined there was no constitutional violation established by Plaintiff's claims, her conspiracy claims also fails and must be dismissed.

## V.   CONCLUSION

Based on the foregoing, the *Motion for Judgment on the Pleadings of Attorney General Steve Marshall and District Attorney Ashley Rich* (Doc. 18, filed 1/3/20, as supplemented by Doc. 33, filed 11/23/20) and the *Motion to Dismiss* (Doc. 20, filed 1/6/20, as supplemented by Doc. 34, filed 11/23/20) are ultimately **GRANTED**. As such, Plaintiff's individual claims are **DISMISSED with prejudice** and the class claims are **DISMISSED with prejudice as to refiling by this Plaintiff**, but **DISMISSED without prejudice** as to any other potential plaintiffs.

**DONE** and **ORDERED** this 29th day of September, 2021.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE